Filed 8/7/26  P. v. Flores CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064794 |
| v. | (Super. Ct. No. 23CF3252) |
| RODOLFO GUSTAVO FLORES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General,

A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

A jury found defendant Rodolfo Gustavo Flores guilty of committing lewd acts on two girls three years apart, one in 2016 and one in 2019. He was sentenced to three years, eight months in prison. Defendant contends the trial court erred in denying his motion to dismiss the 2016 charge on the grounds (1) the eight-year delay between the time the offense was committed and the charge was filed violated his state and federal constitutional rights, and (2) law enforcement destroyed potentially exculpatory evidence relating to the 2016 incident without justification and in bad faith. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

2016 INCIDENT: COUNT 1

Just before 5:00 a.m. on August 14, 2016, a man later identified as defendant entered a bedroom where 11-year-old S.M. was half-asleep, put his bare hand under her clothes, and touched her thigh and buttocks. S.M. sat up and saw the person who had touched her. This occurred while S.M. was staying overnight at a residence in Moreno Valley in the County of Riverside. Defendant's sister and mother were babysitting S.M. and her little sister that night in the home of defendant's parents, where defendant was living at the time. He had been up with members of his family drinking until approximately 3:00 a.m. Immediately after defendant touched her, S.M. called her mother, told her what had happened, and exchanged text messages with her. That same day, S.M. spoke to deputy sheriffs from Riverside County. The deputies showed her three photographs of the men who were at

2

the home at the time of the incident: one of defendant, one of defendant's brother, and one of defendant's father. S.M. identified defendant from the photograph as the man who molested her.[1]

The Riverside Sheriff's department arrested defendant and referred the case to the Riverside County District Attorney's office, which elected not to pursue charges.[2] There was no further investigation into the case involving S.M. Two years later, in August 2018, some of the evidence relating to the investigation was destroyed, including two CDs, miscellaneous documents and photos, and recordings of the deputies' initial contacts at the scene. The destroyed materials included the photographs of defendant's father and brother that were shown to S.M. and audio recordings of interviews with defendant, S.M., and S.M.'s mother.[3] But not all the investigative material was destroyed; some was maintained, including police reports, the photograph of defendant that had been shown to S.M., and a

---

[1] According to the deputy who showed S.M. the photographs, she identified defendant within three seconds. She also pointed him out to her mother when she arrived that morning to pick her up, saying "That's him," and later identified defendant in person at his trial in 2024. S.M. testified she had seen defendant's father and brother before the incident and was certain it was not them.

[2] Both parties assume the District Attorney's office declined to prosecute the case based on its belief the evidence was insufficient at that time to support a conviction.

[3] According to defendant's counsel, it is not clear what exactly was included in the items that were destroyed because police did not document the contents before destroying them.

screenshot from S.M.'s mother's phone showing a text message between them on the day of the incident.

## II.

### 2019 INCIDENT: COUNT 2

After the incident involving S.M., defendant moved from Moreno Valley to Riverside to live with his girlfriend, Catherine. On the night of March 30, 2019, Catherine's 15-year-old cousin, A.M.,[4] and defendant both attended A.M.'s quinceañera, which was held in the backyard of A.M.'s home in Santa Ana. Defendant was drunk. At approximately midnight, A.M. went to bed in her bunk bed. While A.M. was lying on the top bunk facing the wall, defendant entered the room, put his hand under her clothes, and touched her buttocks. A.M. saw the man who touched her and recognized him as defendant, who she knew to be Catherine's boyfriend. A.M. told her mother what happened, and the mother confronted defendant, who denied doing anything to A.M. The incident was reported to police a month later on April 24, 2019.

After an approximate two-year delay in the investigation, police interviewed A.M. in August 2021. They were unable to contact defendant until November 20, 2023, and when they did, he admitted he was at the quinceañera that night and had touched A.M. in her bedroom while she was lying on the top bunk, although he said he accidentally did so after losing his

---

[4] Although the last initial of the two victims' names is the same, they are not related.

4

balance. Police asked defendant if he had ever been accused of molestation before, and he told them about the 2016 incident involving S.M.

## III.

### CHARGES AND DEFENDANT'S MOTION TO DISMISS

On November 28, 2023, the Orange County District Attorney's Office filed a felony complaint charging defendant with one count of committing a lewd act on S.M., a child under the age of 14 (Pen. Code, § 288, subd. (a); Count 1) and one count of committing a lewd act on A.M. (Pen. Code, § 288, subd. (c)(1); Count 2).[5] The preliminary hearing took place on June 28, 2024, and defendant was held to answer. On July 8, 2024, the People filed an information charging defendant with the same two counts.

On September 23, 2024, defendant filed a motion to dismiss the information in its entirety on the grounds he had been denied due process and a speedy trial pursuant to both the federal and state constitutions. As to Count 1, defendant contended his rights to a speedy trial and due process were violated due to the eight-year delay in filing charges against him.[6]

With respect to Count 1, the trial court ruled defendant had no right to a speedy trial because defendant was never charged with the crime

---

[5] The Orange County District Attorney's Office obtained authority from the Riverside County District Attorney's office to assume jurisdiction over and prosecute the 2016 case involving S.M. in Orange County.

[6] Defendant also moved to dismiss Count 2 relating to the 2019 offense on the ground his due process rights were violated due to the delay from the time the crime was reported to the time the investigation was completed and a warrant was issued for defendant's arrest. Defendant makes no contention on appeal of unconstitutional delay in connection with Count 2, but instead contends the delay in charging the 2016 incident prejudiced defendant's ability to defend against both charges.

during the eight-year delay.[7] As to the due process argument, the trial court found defendant had not demonstrated actual prejudice from the delay and, even if prejudice had been shown, the prosecution showed good cause to justify the delay in prosecution. The court denied the motion, but without prejudice to the defense showing prejudice during trial.

Defendant's motion also sought dismissal of the information pursuant to *California v. Trombetta* (1984) 467 U.S. 479 (*Trombetta*) and *Arizona v. Youngblood* (1988) 488 U.S. 51 (*Youngblood*) based on law enforcement's destruction of certain investigative materials relating to the 2016 incident.[8] The trial court denied the motion, finding defendant had not shown bad faith on the part of law enforcement in destroying the evidence, defendant's contention the evidence may have contained exculpatory material was based on speculation, and both S.M. and S.M.'s mother would be testifying at trial. The court stated it would permit defense counsel to question police at trial about the destruction of evidence and would consider giving jury instructions pertaining to the issue.[9]

The jury found defendant guilty on both counts on October 3, 2024. The trial court sentenced defendant to the low term of three years for

---

[7] Defendant does not contest on appeal the trial court's ruling that there was no violation of his right to a speedy trial.

[8] We cannot ascertain from the record whether it was law enforcement personnel or the Riverside District Attorney's office that destroyed the materials relating to the investigation, but that is not relevant to our analysis and conclusions. For ease of reference, we refer generally to law enforcement when we discuss the destruction of the materials.

[9] Ultimately, no jury instructions were requested or given on this issue.

Count 1 and one-third the midterm of eight months for Count 2, to run consecutively. Thus, the overall sentence was three years, eight months in state prison.

## DISCUSSION

### I.

#### PRECHARGING DELAY REGARDING THE 2016 OFFENSE

Defendant contends the trial court's denial of his motion to dismiss the charge in Count 1 based on an eight-year precharging delay constitutes reversible constitutional error. We disagree.

Both the United States and California constitutions protect criminal defendants from "unjustified and prejudicial" precharging delay. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*).) A defendant asserting such a claim must demonstrate prejudice arising from the delay. (*Ibid.*) Although prejudice may arise from "'the loss or destruction of material physical evidence,'" prejudice is not presumed and must be affirmatively supported by specific facts. (*Ibid.*) A claim of prejudice may not be based on mere speculation. (*People v. Abel* (2012) 53 Cal.4th 891, 909.)

Even when a defendant can show some prejudice from precharging delay, "'[t]he prosecution may offer justification for the delay, and the court . . . balances the harm to the defendant against the justification for the delay.'" (*Nelson, supra*, 43 Cal.4th at p. 1250.)[10] There are "three types

___

[10] As explained in *Nelson*, "[t]he state and federal constitutional standards regarding what justifies delay differ. Regarding the federal constitutional standard . . . '[a] claim based upon the federal Constitution also requires a showing that the delay was undertaken to gain a tactical advantage over the defendant.'" (*Nelson, supra,* 43 Cal.4th at p. 1251.) Because "the law under the California Constitution is at least as favorable for defendant in this regard as the law under the United States Constitution. . . . we can and will apply California law." (*Ibid.*) The parties

of reasons for delay by the People in bringing charges to assess whether there has been a due process violation: '[p]urposeful delay,' 'negligent' delay, and 'investigative delay.'" (*People v. McInnis* (2025) 115 Cal.App.5th 1259, 1289, citing *Nelson, supra,* 43 Cal.4th at pp. 1255–1256.) "Under the California standard, 'negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process." (*People v. Cowan* (2010) 50 Cal.4th 401, 431.) "'Purposeful delay to gain advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation.' [Citation.] The justification for the delay is strong when there is 'investigative delay, nothing else.'" (*Ibid.*)

Whether a delay was prejudicial to the defendant is a question of fact. (*People v. Dunn–Gonzalez* (1996) 47 Cal.App.4th 899, 911–912.) We review the trial court's ruling for abuse of discretion, deferring to any underlying factual findings made by the court so long as they are supported by substantial evidence. (*People v. Cowan, supra,* 50 Cal.4th at p. 431.)

We first address defendant's assertion of prejudice. In addition to the passage of time and its potential impact on the memories of witnesses, defendant contends law enforcement's destruction of the investigative materials relating to the 2016 incident prejudiced his ability to defend the case because the destroyed material "likely was exculpatory." We find no

---

agree the standard is more stringent under federal law, which requires that defendant show intentional conduct by the prosecution in order to gain some tactical advantage. The trial court denied defendant's motion on the grounds it did not meet either the federal or state standards. Defendant does not dispute the portion of the ruling on appeal denying the motion under federal law.

error in the trial court's conclusion that defendant's claim of prejudice is speculative. In addition, the court denied the motion to dismiss without prejudice and invited defendant to explore at trial potential prejudice arising from the destruction of the materials. He was unable to do so.

For instance, defendant's counsel elicited testimony at trial about law enforcement's destruction of evidence relating to their investigation, including the recording of what S.M. and her mother told police that day, the recording of defendant's police interview, photographs of the scene, the photographs of defendant's brother and father that were shown to S.M., and other possible text messages exchanged between S.M. and her mother that, according to defendant, might have corroborated testimony from defendant's family that S.M. was homesick and wanted to go home. But there was nothing elicited at trial or otherwise contained in the record below indicating any of the destroyed materials may be exculpatory. (See *People v. Lewis* (2015) 234 Cal.App.4th 203, 212 [defendant's contention that lost records "might have contained information he could have used to impeach" victim inadequate to establish actual prejudice for due process violation].)

In addition, defendant was able to mitigate any potential prejudice at trial. All individuals with knowledge of facts relating to the 2016 incident—including S.M., S.M.'s mother, defendant, and defendant's relatives—testified at trial, and defendant made no assertion that any witness with information regarding the incident was unavailable or unable to testify due to the passage of time. During trial, defense counsel fully examined witnesses and argued about S.M.'s credibility, including the possibility she concocted the accusation because she was homesick and just

9

wanted to go home. Defense counsel also exposed multiple inconsistencies in S.M.'s testimony and statements to police.

Even assuming for the sake of argument that defendant established a minimal amount of prejudice due to the destruction of the investigative materials, the record shows a strong justification for the prosecution's delay in bringing charges, which heavily outweighs any potential prejudice. After S.M. accused defendant of molesting her and the Riverside County District Attorney's office declined to prosecute, defendant committed a nearly identical act of molestation just three years later in 2019. That conduct constituted new evidence that bolstered the 2016 case. We agree with the People that, with defendant's molestation of A.M. in 2019, there was a profound and qualitative shift in the strength of the evidence against defendant as to the 2016 case, particularly given the sexual nature of both offenses, the similar means by which defendant molested both victims, the lack of any familial relationship between the victims, and the cross-admissibility of sexual offense evidence under Evidence Code section 1108.

Indeed, defendant's molestation of A.M. in 2019 was admissible to show defendant's propensity to commit the 2016 crime against S.M. "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).) Here, the jury was instructed that proof beyond a reasonable doubt that defendant committed the 2019 case allows the jury to "conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was

10

likely to commit and did commit the other sex offense [i.e., the 2016 incident] charged in this case." (See CALCRIM No. 1191B.)

In a recent decision by our colleagues in the Fourth Appellate District, Division One, the court held that a 27-year delay in charging a defendant with murder was justified where the evidence was insufficient to charge him until, many years later, forensic technology and funding for cold case investigations became available and enabled the prosecution to identify the defendant as a suspect and establish his guilt through a DNA comparison analysis. (*People v. McInnis*, *supra*, 115 Cal.App.5th at p. 1313.) The fact that the inculpatory evidence was not available until years later constitutes "investigative [delay] and weighs heavily in favor of the prosecution in the balancing test." (*Id*. at p. 1309.) In fact, "'[a] prosecutor abides by elementary standards of fair play and decency by refusing to seek indictments until he or she is completely satisfied the defendant should be prosecuted and the office of the prosecutor will be able to promptly establish guilt beyond a reasonable doubt.'" (*Nelson*, *supra*, 43 Cal.4th at p. 1256.).

We find no error in the trial court's determination that no due process violation occurred as a result of the precharging delay in this case.

II.

LAW ENFORCEMENT'S SELECTIVE DESTRUCTION OF

INVESTIGATIVE MATERIALS FROM THE 2016 INCIDENT

Citing *Trombetta*, *supra*, 467 U.S. 479, and *Youngblood*, *supra*, 488 U.S. 51, defendant contends law enforcement's destruction of potentially exculpatory evidence violated his constitutional rights and the trial court therefore erred in denying defendant's motion to dismiss the information. We

review the court's order denying the motion for substantial evidence (*People v. Duff* (2014) 58 Cal.4th 527, 549 (*Duff*)), and find no error.

"'Due process does not impose upon law enforcement "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."' [Citations.] At most, the state's obligation to preserve evidence extends to 'evidence that might be expected to play a significant role in the suspect's defense.' [Citations.] If the evidence's exculpatory value is apparent and no comparable evidence is reasonably available, due process precludes the state from destroying it." (*Duff, supra,* 58 Cal.4th at p. 549.)

"[I]f the best that can be said of the evidence is that it was 'potentially useful,' the defendant must also establish bad faith on the part of the police or prosecution." (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 773; see *Youngblood, supra,* 488 U.S. at p. 58 [bad faith required for a constitutional violation for failure to preserve potentially exculpatory evidence].) The *Youngblood* standard does not require a finding that law enforcement acted with any kind of malicious intent. Instead, the standard simply requires that law enforcement recognized the potentially exculpatory value of the evidence it failed to preserve. (*People v. Beeler* (1995) 9 Cal.4th 953, 976 [the duty to preserve "'necessarily turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed'"].) When evidence is only potentially useful to the defense, the state's failure to preserve it does not violate due process unless "the police themselves by their conduct indicate that the evidence could form a basis for

12

exonerating the defendant [citation] and [nevertheless] fail to preserve it."
(*People v. Alvarez, supra,* 229 Cal.App.4th at p. 777.)

The trial court denied defendant's motion on the grounds that (1) he failed to show bad faith relating to the destruction of the evidence, and (2) he failed to show by anything other than speculation that the materials had exculpatory value that was apparent before the evidence was destroyed and the materials were of such a nature defendant would be unable to obtain comparable evidence by other reasonably available means. The court denied the motion without prejudice to the defense questioning witnesses at trial about information that was destroyed.

Substantial evidence supports the trial court's conclusion there was nothing more than speculation supporting defendant's contention that the investigative materials destroyed in 2018 possessed exculpatory value that was apparent before they were destroyed.[11] (*Trombetta, supra*, 467 U.S. at pp. 488–490.) And even assuming for the sake of argument the materials contained information potentially useful to the defense, there is nothing in the record to indicate the destruction was in bad faith. Following its investigation into defendant's alleged touching of S.M., the Riverside County Sheriff's department referred the matter for prosecution to the Riverside County District Attorney's office, which elected not to pursue charges against defendant. It was two years after that decision that the materials were destroyed. The only reason the 2016 case ended up being charged was because defendant committed a similar act in 2019, prompting the Orange

---

[11] During the hearing on defendant's motion, the trial court stated its belief that the information destroyed likely would be helpful for the prosecution, but what it may have contained and its exculpatory value to the defendant is speculative.

13

County District Attorney's office to obtain the transfer of jurisdiction to prosecute the case.

Defendant argues that law enforcement's selective preservation of only certain materials, such as defendant's photograph shown to S.M. but not the photographs of defendant's brother and father, and the failure to maintain a record of what was destroyed shows the materials had apparent exculpatory value. Defendant also argues that destroying evidence just two years after the incident occurred and before the statute of limitations had run constitutes bad faith. We disagree with both contentions and agree with the trial court's conclusion they are based purely on speculation.

DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

MOTOIKE, P. J.

DELANEY, J.

14